# EXHIBIT A

Skip to Main Content   Logout   My Account   Search Menu   New Civil Search   Refine Search   Back     Location : Comal   Help

# REGISTER OF ACTIONS
### CASE NO. C2020-1194A

**Wesdem, LLC vs. Illinois Tool Works, Inc. d/b/a ITW Evercoat**

| | |
|---|---|
| Case Type: | Civil Case - Other |
| Date Filed: | 07/29/2020 |
| Location: | 22nd District Court |

---

## PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | Illinois Tool Works, Inc. d/b/a ITW Evercoat | |
| **Plaintiff** | Wesdem, LLC | JOSHUA H. SISAM<br>*Retained*<br>830-428-0333(W) |

---

## EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | |
|---|---|---|---|
| 07/29/2020 | **ORIGINAL PETITION (OCA)** | | |
| 07/30/2020 | **Motion** | | |
| 07/31/2020 | **CITATION** | | |
| 07/31/2020 | **Citation** | | |
| |    Illinois Tool Works, Inc. d/b/a ITW Evercoat | Served<br>Response Due | 07/31/2020<br>08/24/2020 |
| 07/31/2020 | **CITATION RETURNED SERVED** | | |

---

## FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** Wesdem, LLC | | | |
| | Total Financial Assessment | | | 363.00 |
| | Total Payments and Credits | | | 363.00 |
| | **Balance Due as of 08/18/2020** | | | **0.00** |
| 07/30/2020 | Transaction Assessment | | | 355.00 |
| 07/30/2020 | EFile Electronic Payment - Texfile | Receipt # 2020-179565 | Wesdem, LLC | (355.00) |
| 07/31/2020 | Transaction Assessment | | | 8.00 |
| 07/31/2020 | EFile Electronic Payment - Texfile | Receipt # 2020-179585 | Wesdem, LLC | (8.00) |

FILED
C2020-1194A
7/29/2020 1:38 PM
Heather N. Kellar
Comal County
District Clerk
Accepted By:
Neelima Akula

C2020-1194A

| | |
|---|---|
| CAUSE NO. _____ | IN THE DISTRICT COURT OF<br>COMEL COUNTY, TEXAS |
| WESDEM, LLC,<br><br>    PLAINTIFF | |
| v. | _____ JUDICIAL DISTRICT COURT |
| ILLINOIS TOOL WORKS, INC. d/b/a<br>ITW Evercoat,<br><br>    DEFENDANT | DEMAND FOR JURY TRIAL |

**PLAINTIFF'S FIRST PETITION
AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF THE COURT:**

"**Plaintiff** files his Original Petition and Jury Demand against Defendant, and in support thereof would show the Court as follows:

**NATURE OF THE ACTION**

1. Defendant manufactures a group of auto detailing and cleaning products referred to as various Auto Magic products.

2. Plaintiff is an independent distributor of Auto Magic products for Defendant.

3. As an independent distributor, Plaintiff was not an employee of Defendant, nor did Plaintiff receive any employee benefits from Defendant.

4. Likewise, Defendant did not pay any of Plaintiff's expenses, such as office, travel, advertising, or staff, for Plaintiff to develop a marketing presence.

5. Plaintiff was not required to have any sales quotas and operated under an oral contract that was outside of the Statute of Frauds.

6. As an independent distributor, Plaintiff has increased its sales volume from approximately $25,000 per month in October 2018 to over $40,000 per month in June 2020.

7. Defendant wrongfully breached Plaintiff's contract and is now attempting to appropriate Plaintiff's sales through third party marketplaces, such as Amazon, to itself.

8. Plaintiff commences this action for Breach of Contract, Promissory Estoppel, Unjust Enrichment, and Tortious Interference with existing and prospective contractual relations.

### RULE 190.3 DISCOVERY LEVEL NATURE OF THE ACTION

9. Pursuant to TEX. R. CIV. P. Rule 190.3, Level 2 discovery applies; however, Plaintiff reserves the right to request a discovery control plan from the Court pursuant to Rule 190.4.

### RULE 194.1 REQUEST FOR DISCLOSURE

10. Pursuant to TEX. R. CIV. P. Rule 194.1, Plaintiff requests disclosures from Defendant, within 30 days of service of this request, the information or material described in Rule 194.2.

### RULE 47(C) STATEMENT OF RELIEF

11. Pursuant to TEX. R. CIV. P. Rule 47(c), Plaintiff seeks monetary relief of more than $200,000, but less than $1,000,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees, as well as non-monetary relief. Plaintiff reserves the right to amend this statement to conform with the evidence.

### JURISDICTION AND VENUE

12. Pursuant to TEX. R. CIV. P. Rule 47(b), the claims contained herein are within the jurisdictional limits of this Court.

13. In accordance with the Texas Civil Practice and Remedies Code § 17.042, this Honorable Court has jurisdiction over the Defendant. The Defendant conducted business in the State of Texas and has had sufficient minimum contacts, such that it has purposefully availed itself to the jurisdiction of this Court.

### PARTIES

14. **Named Plaintiff** is a Texas Limited Liability Company, with its principal place of business

is in Comal County, Texas.

15. **Based upon information and belief, Named Defendant**, is a corporation located at 3600 West Lake Avenue, Glenview, IL 60026 and authorized to do business in Texas, which contracted with Plaintiff in Texas, ships products to Texas, corresponded with Plaintiff in Texas, and sent its notice of its breach to Plaintiff; all such actions occurred in the State of Texas.

## MISNOMER / MISIDENTIFICATION

16. In the event any party is misnamed or is not included herein, it is Plaintiff's contention that such was a "misidentification," "monomer" and/or such are/were "alter egos" of parties and named herein. Alternatively, Plaintiff contends that such "corporate veils" should be disregarded in order to hold such parties properly responsible in the interest of justice.

## FACTUAL ALLEGATIONS

17.  Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

18. On September 5, 2018, Defendant's authorized representative, Defendant's Zone Manager and authorized representative, Skip Wier, traveled to San Marcos, Texas, to meet with Plaintiff's owner, Troy Breeden, for the purpose of enticing Plaintiff to become a Distributor of Defendant.

19. At the time of the meeting, Plaintiff explained it was contemplating the purchase of Texas Auto Products from Damon Rogers.  Texas Auto Products was an existing distributor of Defendant's.

20. At the time that Plaintiff met with Wier, Amazon represented approximately 50% of all of Texas Auto Products.

21. Defendant was aware that Texas Auto Products was selling to/through Amazon.

22. Plaintiff told Defendant that Plaintiff would only purchase Texas Auto Products (1) if it

could become a distributor for Defendant and (2) if it could continue to sell Auto Magic products through Amazon and other internet-based marketplace companies.

23. In that meeting, Skip Wier represented to Plaintiff and gave Mr. Breeden assurances that, if Plaintiff purchased Texas Auto Products and became (or continued to be) a distributor for Defendant, Plaintiff could continue to sell products through Amazon and other similar companies for as long as it wanted.

24. To emphasize this point, Wier told Plaintiff that distributors were the life blood of Defendant's business. He further said that Defendant was committed to supporting the investments of Plaintiff and its distributors who distributed Defendant's product line.

25. Additionally, Wier represented that Defendant would never stop Plaintiff from developing its markets and that Plaintiff could sell to any customer, including Amazon, especially since Plaintiff would be spending its time, effort, and expense to develop sales for Defendant.

26. In that meeting, Wier referred to Defendant and its distributors as one family. Wier assured Plaintiff that if it joined the Auto Magic family it would be able to reap the rewards of its efforts and expense.

27. Skip Wier further represented, warranted, and promised Plaintiff that Defendant would never convert Plaintiff's customers or market to itself, nor would it ever interfere with Plaintiff's ability to sell Defendant's products to Plaintiff's customers.

28. At that same meeting, Defendant again reassured Plaintiff that it could sell Defendant's products (Auto Matic) through marketplace companies, such as Amazon.

29. Defendant further represented, as an enticement for Plaintiff to become a distributor, that Defendant would never steal Plaintiff's markets and/or clients, nor would it hamper Plaintiff's future growth through e-commerce marketplaces such as Amazon, if Plaintiff sold to customers

through third party e-commerce marketplaces, such as Amazon.

30. At that meeting, Plaintiff also wanted assurances from Defendant that, if it purchased Texas Auto Products, it would not be terminated or have imposed sales quotas.  Wier again represented that distributors were the life blood of Defendant's business and that Plaintiff could be a distributor for as long as it wanted without any sales quotas or minimum sales volumes.

31. In reliance on Defendant's representations, warranties and promises made at that September 5, 2018, meeting, Plaintiff purchase Texas Auto Products for $250,000 and became a distributor for Defendant.  Plaintiff and Defendant entered into an oral contract for Plaintiff to be a distributor of Defendant on the terms outlined by Wier and Plaintiff's owner, Troy Breeden.

32. As a direct result of Defendant's representation, warranties, and promises and in furtherance of its contract, Plaintiff has expended a vast amount of time, effort, expertise, and expense to sell Defendant's products.

33. From approximately October of 2018 to about July of 2020, Plaintiff increased its sales of Auto Magic from approximately $25,000 per month to approximately $40,000 per month.  A substantial proportion of those sales came through third party e-commerce marketplace entities, such as Amazon.

34. On or about, July 10, 2020, (referred to herein as the "July 2020 notice") Defendant sent a notice to Plaintiff informing it of Defendant's "*new* Authorized Distributor Program."

35. The July 2020 notice further states:

> "ITW Evercoat (Defendant) is implementing several *new* initiatives designed to best position the Auto Magic brand for growth in e-commerce channels. … The Policy prohibits sales of Auto Magic products on **ANY** online marketplace, such as *Amazon*, eBay or Walmart, without out prior written consent." (Emphasis added) Exhibit 1.

36. In reliance on Defendant's prior promises, that Plaintiff could sell Auto Magic products through online marketplaces, Plaintiff immediately requested that Defendant grant it consent to allow Plaintiff to continue to sell through online marketplaces, such as Amazon.

37. Plaintiff was confident that Defendant's consent would be given for various reasons, including, but not limited to:  a) the July 2020 notice provided for distributors to request written consent to sell to online marketplace, such as ***Amazon***, eBay or Walmart;  *Id.*  b) Defendant gave Plaintiff its assurance in September of 2018 that it would never convert Plaintiff's customers or Plaintiff's markets to itself, nor would it ever interfere with Plaintiff's ability to sell Defendant's products through online marketplaces, such as Amazon; c) Defendant's prior course of dealing with Plaintiff allowed Plaintiff to sell Auto Magic products through online third party marketplaces, such as Amazon; and d) Defendant had facilitated the shipments of Auto Magic to Plaintiff, in the past, at a location that would allow Plaintiff to send the Auto Magic products more easily to Amazon.

38. Yet, in spite of its repeated promises and representations, Defendant refused to give Plaintiff its consent to sell Auto Magic products on **ANY** online marketplace, such as *Amazon*, eBay, or Walmart online marketplaces.

39. Defendant's July 2020 notice, together with its subsequent refusal to grant its consent to allow Plaintiff to sell Auto Matic products through online marketplaces, such as Amazon, was a breach of Defendant's representations, warranties and promises.

40. Defendant's breach was a direct and proximate cause of Plaintiff's damages, which damages will continue to grow unless Defendant consents to allow Plaintiff to continue to sell through e-commerce marketplace entities, such as Amazon.

41. Plaintiff seeks damages, for the harm caused by Defendant's breach of promises,

promissory estoppel, unjust enrichment, and tortious interference with existing and prospective business and contractual relations, and other just legal and equitable remedies afforded by law and equity.

### CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

42. Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

43. Pursuant to TEX. R. CIV. P. Rule 48, this Count is alleged in the alternative to Count II (Promissory Estoppel), and Count III (Unjust Enrichment). Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

44. There is a valid, enforceable contract.

45. Plaintiff is a proper party to bring suit for breach of the contract.

46. Plaintiff faithfully performed or substantially performed, tendered performance, or was excused from performing its contractual obligations.

47. The Defendant breached the contract.

48. The Defendant's breach caused Plaintiff's injury.

### COUNT II – PROMISSORY ESTOPPEL

49. Pursuant to TEX. R. CIV. P. Rule 48, this Count is alleged in the alternative to Count I (Breach of Contract). Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

50. The Defendant made multiple representations, warranties, and promises to Plaintiff. For example, if Plaintiff purchased the business from Damon Rogers and became a distributor for Defendant, Plaintiff could continue to sell products through online marketplaces such as Amazon

and other similar companies, as Texas Auto Products had been doing.

51. Defendant further represented, warrantied, and promises that it would never stop Plaintiff from developing its marketing plan to sell to customers through online marketplaces, such as and including Amazon.

52. In reliance of Defendant's representation, warranties, and promises, Plaintiff invested substantial amount of money to purchased Texas Auto Products and became a distributor for Defendant.

53. Further, in reliance on Defendant's representation, warranties, and promises Plaintiff spent an enormous amount of time, effort, and expense selling through online marketplaces, such as Amazon.

54. Plaintiff reasonably and substantially relied on those promises to its detriment.

55. Plaintiff's reliance was foreseeable by Defendant.

56. Defendant broke its representation, warranties, and promises.

57. Defendant is estopped from denying the truth of its representations, warranties, and promises.

58. Injustice can be avoided only by enforcing Defendant's representation, warranties, and promises.

### COUNT III – UNJUST ENRICHMENT

59. Pursuant to TEX. R. CIV. P. Rule 48, this Count is alleged in the alternative to Count I (Breach of Contract). Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

60. Plaintiff spent time, effort, and money to develop its online marketplace business with Amazon, which greatly increased the sales of Defendant's products.

61. Based upon information and belief, Defendant intended to benefit from the time, effort, and money Plaintiff had spent to mature its relationship with Amazon and to market Auto Magic through online marketplaces that Plaintiff had developed.  Those relationships and markets are of great value to Plaintiff and will be converted by Defendant to itself if Plaintiff is not adequately compensated for its loss.

62. Defendant has offered no compensation to Plaintiff for Plaintiff's online marketplace business but has rejected Plaintiff's request to continue to sell through e-commerce marketplace entities.

63. Injustice can be avoided only by enforcing the equitable claim of Unjust Enrichment to prevent Defendant from being unjustly enriched at Plaintiff's expense.

### COUNT IV -- TORTIOUS INTERFERENCE

a) INTERFERENCE WITH EXISTING Contract;
b) INTERFERENCE WITH BUSINESS RELATIONSHIPS, and
c) Interference with Prospective RELATIONSHIPS

64. Plaintiff incorporates by reference all the allegations contained in this Petition, as if those allegations were set forth herein verbatim.

65. Court IV has three separate and distinct causes of actions:

#### a. Tortious Interference with Existing Contract

66. Plaintiff has an existing contract with Amazon to sell Auto Magic products.

67. Defendant is aware that Plaintiff has a contract with Amazon to sell Auto Magic products.

68. Defendant sent a notice to Plaintiff that had the effect of demanding that Plaintiff cease and desist from conducting business with Amazon for the sale of Auto Magic.

69. Such action by Defendant was with a conscious desire to prevent the relationship between Plaintiff and Amazon from continuing; and Defendant knew or was reasonably sure that its notice

would prevent Plaintiff from continuing to sell through Amazon because Defendant threatened to prevent Plaintiff from obtaining Defendant's Auto Magic products to sell through Amazon if it did not cease to do business with e-commerce marketplace sellers such as Amazon.

70. Such interference has caused Plaintiff damages and was the proximate cause of Plaintiff's damages.

### b. Tortious Interference with Existing Business Relationship

71. Plaintiff has an existing business relationship with Amazon to sell Auto Magic products.

72. Defendant is aware that Plaintiff has a business relationship with Amazon to sell Auto Magic products.

73. Defendant sent a notice to Plaintiff that had the effect of demanding that Plaintiff cease and desist from continuing its business relationship with Amazon for the sale of Auto Magic.

74. Such action by Defendant was with a conscious desire to prevent the relationship between Plaintiff and Amazon from continuing; and Defendant knew or was reasonably sure that its notice would prevent Plaintiff from continuing to sell through Amazon because Defendant threatened to prevent Plaintiff from obtaining Defendant's Auto Magic products to sell through Amazon if it did not cease to do business with e-commerce marketplace sellers such as Amazon.

75. Such interference has caused Plaintiff damages and was the proximate cause of Plaintiff's damages.

76. Such interference has caused Plaintiff damages and was the proximate cause of Plaintiff's damages.

### c. Tortious Interference with Prospective Relationships

77. Plaintiff has an existing business relationship with Amazon to sell Auto Magic products and there was a substantial likelihood that the business relationship was prospective and would

continue into the future.

78. Defendant is aware that Plaintiff has a business relationship with Amazon to sell Auto Magic products and desired that Plaintiff no longer continue its business relationship with Amazon regarding the sales of Auto Magic products.

79. Defendant sent a notice to Plaintiff that had the effect of demanding that Plaintiff cease and desist from continuing its business relationship with Amazon and any other e-commerce marketplace sellers for the sale of Auto Magic. Such notice intended that all future sales relationships would cease effective July 27, 2020.

80. Such action by Defendant was with a conscious desire to stop all future relationships between Plaintiff and Amazon from continuing; and Defendant knew, or was reasonably sure, that its notice would cause all future relationships to cease and to prevent Plaintiff from continuing to sell through e-commerce marketplace sellers as Amazon because, if Plaintiff continued, Defendant would prevent Plaintiff from obtaining Defendant's Auto Magic products

81. Such interference has caused Plaintiff damages and will continue to cause ongoing injury to Plaintiff. As such, the action and future threatened actions by Defendant are the proximate cause of Plaintiff's damages.

82. Such interference has caused Plaintiff damages and was the proximate cause of Plaintiff's damages.

## ATTORNEYS' FEES

d.  Plaintiff is entitled to recover reasonable and necessary attorney fees that are equitable and just under TEX. CIV. PRAC. REM CODE § 38(8) because this is a suit for an oral or written contract.

## JURY DEMAND

e. Plaintiff hereby requests a trial by jury of all issues of fact in this case and herewith tender the jury

fee.

### RESERVATION OF RIGHT TO AMEND

**f.** Plaintiff expressly reserves the right to amend this Petition in accordance with the TEXAS RULES OF CIVIL PROCEDURE, or as equity or justice would require.

### PRAYER FOR RELIEF

**WHEREFORE, FURTHER**, Plaintiff prays that Defendant be cited to appear and answer, and that on a final jury trial, the Court:

1. Award all damages requested by Plaintiff.

2. Award reasonable and necessary attorneys' fees;

3. Award Plaintiff's its costs;

4. Award pre-judgment and post-judgment interest as provided by law; and,

5. Award such other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.


Dated:  July 29, 2020

                                                Respectfully submitted,
By: */s/ Joshua H. Sisam*
Joshua H. Sisam, Esq.
  TX No. 24079346
  MN No. 0394786

Sisam & Associates LLP
  110 Industrial Drive
  Boerne, Texas 78006
(830) 428-0333 – Office
(830) 331-1027 – Fax

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

    This is to certify that, pursuant to Rule 21a of the Texas Rules of Civil Procedure, on the 29th day of July 2020, a copy of the foregoing: Plaintiff's Original Petition was filed electronically. A copy was served to all counsel of record via the e-filing notification system of efile.txcourts.gov. and service of process.

                                              */s/ Joshua H. Sisam*___
                                              Joshua H. Sisam, *Esq.*




Dear Distributor,

At Illinois Tool Works Inc. d/b/a ITW Evercoat (manufacturers of "Auto Magic"), we are committed to you—the distributors that have helped our company supply the professional detailing industry with best-in-class products for more than five decades. To protect the Auto Magic brand and the integrity of our authorized distribution channels, ITW Evercoat is announcing and implementing an Authorized Distributor Program, effective July 27, 2020. This program is designed to preserve the integrity of the Auto Magic brand and to position you and our company for growth and long-term success in today's evolving sales environment.

Among other benefits, our Authorized Distributor Program will support authorized distributors by ensuring that all sellers of Auto Magic products understand and take the steps necessary to ensure product quality and provide the excellent customer service that is integral to the reputation of our brand. In addition, our Authorized Distributor Program will assist us in identifying and taking action against unauthorized sellers that are harming you and your customers through the sale of damaged and diverted products, especially online.

Our expectations under our new Authorized Distributor Program are outlined in the **Auto Magic Authorized Distributor Policy**, which is attached for your review.

**Key Features of the Auto Magic Authorized Distributor Policy:**

- **Where and to Whom You May Sell Auto Magic Products**: ITW Evercoat is committed to supporting the investments of authorized distributors in our product line by stopping the diversion of Auto Magic products to unauthorized sellers. To this end, the Policy requires that you sell Auto Magic products solely to end users, including professionals who use Auto Magic products to provide auto detailing services, and not to persons or entities who intend to resell Auto Magic products.

- **Online Sales**: ITW Evercoat is implementing several new initiatives designed to best position the Auto Magic brand for growth in e-commerce channels. To support our overall e-commerce strategy, the Policy permits you to sell products through your own proprietary websites, subject to the Auto Magic Online Sales Guidelines. The Policy prohibits sales of Auto Magic products any online marketplace, such as Amazon, eBay or Walmart, without our prior written consent.

- **Ensuring Product Quality and Customer Satisfaction:** To ensure that the customers who purchase Auto Magic products have the best experience possible, the Policy outlines our expectations for the service you will provide to your customers. The Policy also describes certain steps you must take to maintain the quality of Auto Magic products until they reach your customers.

At ITW Evercoat, we believe in building strong, long-term business relationships. Our new Authorized Distributor Program is designed to support these relationships with our valued distributors and to ensure the integrity of the Auto Magic brand for decades to come. We thank you for your partnership and continued support of ITW Evercoat and the Auto Magic brand.

Sincerely,

ITW Evercoat



EXHIBIT 1

FILED
C2020-1194A
7/31/2020 4:07 PM
Heather N. Kellar
Comal County
District Clerk
Accepted By:
Shawna Frakes

## CAUSE NO. C2020-1194A

| | | |
|---|---|---|
| WESDEM, LLC | § | IN THE COURT OF |
| | § | |
| Plaintiff, | § | |
| VS. | § | COMEL COUNTY, TEXAS |
| | § | |
| ILLINOIS TOOL WORKS, INC. D/B/A ITW Evercoat | § | |
| | § | |
| Defendant. | § | 22ND JUDICIAL DISTRICT |

## AFFIDAVIT OF SERVICE

"The following came to hand on **Jul 31, 2020, 1:15 pm**,

**CIVIL CITATION, PLAINTIFF'S FIRST PETITION AND JURY DEMAND AND COVER LETTER,**

and was executed at **1999 BRYAN ST., SUITE 900, DALLAS, TX 75201** within the county of **DALLAS** at **01:39 PM** on **Fri, Jul 31, 2020**, by delivering a true copy to the within named

**ILLINOIS TOOL WORKS, INC. D/B/A ITW EVERCOAT, BY DELIVERING TO ITS REGISTERED AGENT, CT CORPORATION SYSTEM, WHERE THE DOCUMENT WAS ACCEPTED BY TERRI THONGSAVAT, INTAKE SPECIALIST**

in person, having first endorsed the date of delivery on same.

I am a person over eighteen (18) years of age and I am competent to make this affidavit. I am a resident of the State of Texas. I am familiar with the Texas Rules of Civil Procedure as they apply to service of Process. I am not a party to this suit nor related or affiliated with any herein, and have no interest in the outcome of the suit. I have never been convicted of a felony or of a misdemeanor involving moral turpitude. I have personal knowledge of the facts stated herein and they are true and correct."

My name is **Eric Harris**, my date of birth is **09/08/1970**, and my address is **1910 Pacific Avenue, Suite 16700, Dallas, TX 75201**, and **United States of America**. I declare under penalty of perjury that the foregoing is true and correct.

Executed in **Dallas** County, State of **TX**, on **July 31, 2020**.

*Eric Harris* (signature)

Eric Harris
Certification Number: PSC-15954
Certification Expiration: 11/30/2020